

BOSTON   CONNECTICUT   NEW JERSEY   NEW YORK   WASHINGTON, DC

**STANLEY A. TWARDY, JR.**
Attorney at Law

One Canterbury Green
Stamford, CT  06901

T: (203) 977 7368 F: (866) 458 1037
satwardy@daypitney.com

December 16, 2015

**VIA ELECTRONIC FILING**

Catherine O'Hagan Wolfe
Clerk of the Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

  Re: *United States v. Ganias*, No. 12-240

Dear Ms. Wolfe:

  We write to advise the Court of the Eighth Circuit's recent opinion in *United States v. Burston*, 2015 WL 7454379 (Nov. 23, 2015), a Fourth Amendment decision that rejects the expansive good-faith exception urged by the government here.  *See* Rule 28(j).

  In *Burston*, a police dog alerted to the presence of drugs after being sent "off-leash to sniff the air" outside the defendant's apartment.  2015 WL 745437, *1.  The police then obtained a warrant to search the defendant's home, where they found drugs and other contraband.  One year later, the Supreme Court held that using a "drug-sniffing dog on a homeowner's porch" constitutes a Fourth Amendment search. *Florida v. Jardines*, 133 S.Ct. 1409, 1413 (2013).  The district court in *Burston* then held that the officers' conduct, even if unconstitutional under *Jardines*, did not require suppression. A unanimous Eighth Circuit panel reversed.

  The Eighth Circuit first rejected the government's contention that officers had reasonably relied on circuit precedent upholding the "use of a drug-sniffing dog," because that precedent dealt with a sniff in the common area of an apartment and thus could not "serve as binding precedent to permit" a sniff outside an apartment window. *Id*. *4-5.  The court also rejected the government's claim that officers reasonably relied on the later warrant to search the defendant's home.  That warrant, the court explained, could not cure the unconstitutional sniff, because the "prewarrant conduct was not close enough to the line of validity" to render the officers' actions "objectively reasonable." *Id.*

  The same analysis should apply here.  As the government concedes, "no directly governing Second Circuit precedent" authorized the mass over-seizure and indefinite retention of



Catherine O'Hagan Wolfe
December 16, 2015
Page 2

Ganias's private papers.  Gov.Br. 58; *see* Def.Br. 48-55, Reply 25-28. And decades of settled precedent barring indefinite seizure of "papers not within the scope of . . . warrants," *see Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976), demonstrates that the prewarrant conduct here "was not close enough to the line of validity" to justify reliance on the 2006 warrant. Def.Br. 52-62, Reply 26-31.  This Court should follow *Burston* and reverse the denial of Ganias's suppression motion.

            Respectfully yours,

            /s/ Stanley A. Twardy, Jr.
             Stanley A. Twardy, Jr.


Enclosure

cc:  All counsel of record (via electronic filing)

2015 WL 7454379
Only the Westlaw citation is currently available.
United States Court of Appeals,
Eighth Circuit.

UNITED STATES of America, Plaintiff–Appellee

v.

Democrus Pernell BURSTON,
Defendant–Appellant.

No. 14–3213.    |    Submitted: Sept. 24, 2015.    |    Filed: Nov. 23, 2015.

**Synopsis**
**Background:** After the United States District Court for the Northern District of Iowa, Linda R. Reade, J., 2014 WL 4352155, adopted in part the report and recommendation of Jon Stuart Scoles, United States Magistrate Judge, 2014 WL 4364468, which denied defendant's motion to suppress evidence gathered from a drug-detection dog sniff and a subsequent search of defendant's apartment, defendant entered a conditional guilty plea. Defendant appealed.

**Holdings:** The Court of Appeals, Melloy, Circuit Judge, held that:

[1] the warrantless search with a drug-detection dog violated defendant's Fourth Amendment rights under *Jardines*, and

[2] the good faith exception in *Davis* did not apply to save the search from violating the Fourth Amendment under *Jardines*.

Reversed and remanded.

West Headnotes (4)

[1]  **Criminal Law**
    Review De Novo
    **Criminal Law**
    Evidence Wrongfully Obtained

    When reviewing the denial of a motion to suppress, the Court of Appeals reviews the district court's legal conclusions de novo but its factual findings for clear error.

    Cases that cite this headnote

[2]  **Criminal Law**
    Illegally Obtained Evidence
    **Criminal Law**
    Evidence Wrongfully Obtained

    The Court of Appeals will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.

    Cases that cite this headnote

[3]  **Controlled Substances**
    Odor Detection;  Use of Dogs
    **Searches and Seizures**
    Curtilage or Open Fields;  Yards and Outbuildings

    *Dunn* factors supported finding that a grassy area in front of defendant's apartment was part of the curtilage of defendant's residence, and thus the warrantless search of the area with a drug-sniffing dog, within six to ten inches of defendant's apartment window, violated defendant's Fourth Amendment rights under *Jardines*, even though the grassy area was not surrounded by an enclosure, where the grassy area immediately surrounded defendant's residence, photographic evidence supported that defendant made personal use of the area by setting up a cooking grill, and a bush planted in the area in front of the window prevented close inspection of the window by passersby. U.S.C.A. Const.Amend. 4.

    Cases that cite this headnote

[4]  **Criminal Law**
    Reliance on Statute, Ordinance, or Precedent;  Mistake of Law

    A police officer did not objectively rely on binding appellate precedent in conducting a warrantless search using a drug sniffing dog in a

grassy area outside defendant's apartment, within six to ten inches from a window of the apartment, and thus the good faith exception in *Davis* did not apply to save the search from violating the Fourth Amendment under *Jardines*; prior appellate cases, which found the warrantless use of drug-sniffing dog in a common interior apartment hallway and surveillance of a common backyard and retrieval of a firearm from a common staircase did not violate the Fourth Amendment, did not apply to authorize the use of a drug sniffing dog in the curtilage of defendant's residence, which was not used as a common area.

U.S.C.A. Const.Amend. 4.

Cases that cite this headnote

**Attorneys and Law Firms**

Raphael M. Scheetz, (argued), Cedar Rapids, IA, for Defendant–Appellant.

Mark Tremmel, AUSA, (argued), Anthony R. Morfitt, AUSA, on the brief, Cedar Rapids, IA, for Plaintiff–Appellee.

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

**Opinion**

MELLOY, Circuit Judge.

**\*1** Appellant Democrus Pernell Burston (Burston) challenges his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Burston contends the district court erred in denying his motion to suppress evidence gathered from a drug-detection dog sniff, a subsequent search of his apartment, and his post-arrest interview. In denying his motion, the district court determined it did not need to decide whether the dog sniff violated the Fourth Amendment as a warrantless search on the curtilage of Burston's home. Instead, the district court held the exclusionary rule did not apply because the officers acted in objectively reasonable reliance on binding circuit precedent. *See Davis v. United States,* ––– U.S. ––––, 131 S.Ct. 2419, 2423–24, 180 L.Ed.2d 285 (2011). Burston argues that the district court erred because the dog sniff occurred six to ten inches from his apartment window and the Fourth Amendment violation was sufficiently clear to preclude the application of *Davis*. We agree with Burston's contentions and hold the district court erred in denying Burston's motion to suppress the evidence seized by the police officer's illegal search. Accordingly, we reverse and remand.

**I.**

On March 13, 2012, Officer John O'Brien (Officer O'Brien) informed Officer Al Fear (Officer Fear), both of the Cedar Rapids Police Department, that there was potential drug use in an apartment in northeast Cedar Rapids. Burston was one of the residents in that apartment. Acting on this information, Officer Fear visited the eight-unit apartment building with his drug-sniffing dog, Marco. Once there, Officer Fear released Marco off-leash to sniff the air alongside the front exterior wall of the west side of the apartment building. There are four exterior apartment doors located on the building's west side, including apartment 4 where Burston resided. His unit had a private entrance and window. A walkway led to his door from a sidewalk, but the walkway did not go directly to (or by) his window. Rather, Burston's window was approximately six feet from the walkway. A bush covered part of his window, and there was a space between the bush and the walkway, which was occupied by his cooking grill. Marco alerted to the presence of drugs six to ten inches from the window of Burston's apartment.

More specifically, Marco sat down next to the private window of Burston's apartment, past the bush that partially covered the window. [1] Officer Fear remained six feet from the apartment. The area where Marco sniffed was not in an enclosed area. Nor was the public physically prevented from entering or looking at that area other than by the physical obstruction of the bush. Both parties presented photos into evidence showing a cooking grill between Burston's door and the space where Marco alerted to the presence of drugs. The photos also show the bush in front of Burston's window. [2] Like Burston's apartment, the other apartments had their own door, exterior window, and grassy areas in front.

**\*2** The same day Marco alerted outside Burston's window, Officer Fear submitted an application for a search warrant based on Marco's alert and Burston's criminal record. A state magistrate judge issued a search warrant. Six days later, Officers Fear and O'Brien, along with other officers, executed a search of Burston's apartment. The officers found four rifles, ammunition, and marijuana residue. Burston was arrested. At the Cedar Rapids Police Station, Burston was read his *Miranda* warnings. He consented to talk, but he refused to

sign a form to indicate such consent. During his post-arrest interview, Burston made incriminating statements. Burston was later charged in an indictment for knowingly possessing firearms and ammunition as a felon and as an unlawful user of marijuana. Burston filed a timely motion to suppress on June 2, 2014, which relied on *Florida v. Jardines,* ––– U.S. ––––, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013), to support his claim that the dog sniff was an illegal warrantless search.[3]

On July 10, 2014, a magistrate judge issued a Report and Recommendation (R & R), recommending the district court deny Burston's motion to suppress. Relying on the analytical approach in *Jardines,* the magistrate judge asserted the dog sniff constituted an unlawful warrantless search under the Fourth Amendment "[b]ecause the area where Marco sniffed is curtilage and because there was no license, explicit or implicit, for Marco to occupy the area where he sniffed." On the other hand, the magistrate judge determined the government established the good faith exception to the exclusionary rule found in *Davis* because Officer Fear relied on binding Eighth Circuit precedent, namely, *United States v. Scott,* 610 F.3d 1009 (8th Cir.2010), and *United States v. Brooks,* 645 F.3d 971 (8th Cir.2011), in conducting the search and because *Jardines* had not been decided at the time of the search. The magistrate judge also determined that the good faith exception in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applied because Burston failed to prove any of the four circumstances in *United States v. Grant,* 490 F.3d 627, 632–33 (2007), to require suppression. After the magistrate judge filed the R & R, Burston entered a conditional guilty plea to one count of possession of a firearm but reserved his right to pursue his suppression motion in the district court and on appeal.

On September 2, 2014, the district court adopted the magistrate judge's R & R in part. In denying Burston's motion to suppress, the district court relied on the *Davis* exception and did not rely on *Leon* or address the curtilage issue.

## II.

[1] [2] When reviewing the denial of a motion to suppress, we review the district court's legal conclusions de novo but its factual findings for clear error. *United States v. Riesselman,* 646 F.3d 1072, 1076 (8th Cir.2011). "We 'will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.' " *Id.* (quoting *United States v. Vanover,* 630 F.3d 1108, 1114 (8th Cir.2011)).

### A.

**\*3** Burston first argues the district court erred because the dog sniff violated his Fourth Amendment rights pursuant to *Jardines;* the drug-sniffing dog entered the curtilage of Burston's residence and the officers did not previously obtain a search warrant. The government counters that, although the district court did not address the issue, the evidence should not be suppressed because the dog sniff was not an illegal search under *Jardines.* The government maintains that this case is distinct from *Jardines* and no Fourth Amendment violation occurred.

In *Jardines,* the United States Supreme Court held that an officer's use of a drug-sniffing dog to investigate a home and its immediate surroundings is a "search" under the Fourth Amendment. *Jardines,* 133 S.Ct. at 1417–18. There, police officers permitted a dog to sniff for drugs on the defendant's front porch. The dog made a positive alert at the base of the front door. *Id.* at 1413. After determining the area where the officers searched constituted "curtilage" protected by the Fourth Amendment and the officers had no license to intrude on that curtilage, the Supreme Court held the dog sniff was an unreasonable search in violation of the defendant's Fourth Amendment rights.[4] *Id.* at 1417–18. The Supreme Court explained, "We therefore regard the area 'immediately surrounding and associated with the home'—what our cases call the curtilage—as 'part of the home itself for Fourth Amendment purposes.' " *Id.* at 1414 (quoting *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). This Court clarified that "[d]etermining whether a particular area is part of the curtilage of an individual's residence requires consideration of 'factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself.' " *United States v. Bausby,* 720 F.3d 652, 656 (8th Cir.2013) (quoting *United States v. Boyster,* 436 F.3d 986, 991 (8th Cir.2006)). To resolve curtilage questions, four relevant factors are considered: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people

passing by." *Id.* (quoting *United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987)).

[3]  Here, the factors discussed in *Dunn* support a finding of curtilage. First, the area sniffed was in close proximity to Burston's apartment—six to ten inches. That area is "immediately surrounding" his residence. Like the magistrate judge, we find the first *Dunn* factor to "strongly support[ ] a finding that the lawn in front of the apartment window is curtilage." Second, the record contains photographic evidence that Burston made personal use of the area by setting up a cooking grill between the door and his window.[5] Third, there was a bush planted in the area in front of the window, which partially covered the window. One function of the bush was likely to prevent close inspection of Burston's window by passersby. Consideration of the first, third, and fourth *Dunn* factors outweighs the one *Dunn* factor that arguably militates against finding the area to be part of the home's curtilage, i.e., the area was not surrounded by an enclosure. The bush, one could argue, served as a barrier to the area sniffed. Hence, we hold the area sniffed constituted the curtilage of Burston's apartment.[6]

**\*4** In addition, the police officers did not have license for the physical invasion of Burston's curtilage. "In our case, even absent the intent to search," the magistrate judge correctly recognized, "police officers would not have an implicit license to stand six to ten inches from the window in front of Burston's apartment." See *Jardines,* 133 S.Ct. at 1417 ("As we have described, [whether the officer's conduct was an objectively reasonable search] depends upon whether the officers had an implied license to enter the porch, which in turn depends upon the purpose for which they entered."). Thus, in agreement with the magistrate judge, because the police officers had no license to invade Burston's curtilage and the area Marco sniffed was within the curtilage of Burston's apartment, we hold the dog sniff was an illegal search in violation of Burston's Fourth Amendment rights under *Jardines.*

## B.

[4]  Agreeing with Burston that his Fourth Amendment rights were violated pursuant to *Jardines,* we turn now to his argument that the good faith exceptions in *Davis* and *Leon* do not apply. According to Burston, Officer Fear did not reasonably rely on binding Eighth Circuit precedent in conducting the dog sniff. Burston contends that the district court wrongly focused on the location of Officer Fear, not the dog, during the dog sniff.[7] The government replies that the exclusionary rule does not apply because the officers acted in objectively reasonable reliance on binding Eighth Circuit precedent in conducting the dog sniff, as required by the *Davis* exception, and the officers executed the search in good faith under *Leon.*

In *Davis,* the Supreme Court explained that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." 131 S.Ct. at 2423–24. In this case, the district court reasoned that *Scott* and *Brooks* were binding precedent, which permitted the dog sniff.

In *Scott,* this Court affirmed the district court's denial of a defendant's suppression motion. 610 F.3d at 1016. There, based on a tip from a confidential informant, a police officer brought his drug-sniffing dog into the common hallway of the defendant's apartment building. The dog sniffed the exterior doorframe of the defendant's apartment and alerted to the odor of narcotics. A detective subsequently applied for and obtained a "no knock" search warrant. Officers executed the search and discovered crack cocaine, marijuana, a digital scale, and plastic baggies, typically used to package drugs. Ultimately, this Court held that the officer's use of a drug-sniffing dog did not constitute a search subject to the Fourth Amendment because the sniff occurred in a common hallway and the police officers were lawfully present.

In *Brooks,* this Court, again, affirmed a district court's denial of a defendant's motion to suppress evidence. Similar to *Scott,* an officer learned from a confidential informant that the defendant was selling drugs and guns from his basement apartment. 645 F.3d at 973. Unlike the facts of *Scott* (or this case), however, *Brooks* did not involve a dog sniff. Rather, in *Brooks,* officers "entered the backyard of the [apartment] building, pursued [the defendant] down the staircase and retrieved the discarded firearm." *Id.* at 975. On appeal, the defendant argued "the officers unlawfully encroached upon the curtilage of his home to seize the firearm." *Id.* This Court was unconvinced that the backyard or staircase could be characterized as curtilage. The staircase did not lead directly to the defendant's residence. It "le[d] to the basement of the multi-family dwelling, in which there [wa]s a common area shared by all tenants." *Id.* at 975–76. Both the staircase and backyard were "visible from public areas." *Id.* at 976. This Court held the officers lawfully seized the firearm pursuant to the plain view doctrine.

**\*5** Officer Fear's reliance on *Scott* and *Brooks* was misplaced and not objectively reasonable. Neither *Scott* nor *Brooks* specifically authorize a dog sniff six to ten inches from a suspect's window, present similar facts, or provide a rationale to justify Officer Fear's search. *See Davis,* 131 S.Ct. at 2429. *Scott* involved a drug-sniffing dog in a *common* interior apartment hallway where the officer and drug dog were *both* constitutionally permitted. *Brooks* involved no drug sniffing dog and the officers conducted surveillance from a *common* backyard and retrieved a firearm from a *common* staircase. By contrast, the area searched in this case was within six to ten inches of Burston's window, that is to say, an *uncommon* area. No common walkway leads to Burston's window. The bush and the grill in front of the window prevent the area from being used as a *common* area. Thus, *Davis* does not apply because neither *Scott* nor *Brooks* serve as binding precedent to permit the drug-detection dog sniff in this factual context. [8]

Finally, bolstering our decision is the fact that cases preceding *Jardines* support the proposition that a police officer cannot invade a homeowner's curtilage by bringing a dog six to ten inches from a resident's window for the purpose of gathering evidence without a warrant. *See, e.g., United States v. Wells,* 648 F.3d 671, 677–78 (8th Cir.2011) (finding officers violated the Fourth Amendment when they stood in the curtilage of the defendant's home, i.e., the portion of the unpaved driveway extending past the rear of the defendant's home, and observed a lighted outbuilding); *United States v. Schroeder,* 129 F.3d 439, 443 (8th Cir.1997) ("But here, 'though the boundaries of curtilage are naturally and necessarily imprecise, the officers undertook a search that caused them to invade what they could not fail to have known was potentially [another's] curtilage." (alteration in original) (quoting *United States v. Reilly,* 76 F.3d 1271, 1281 (2nd Cir.1996))).

### III.

For the above reasons, the district court erred in denying Burston's suppression motion. The exclusionary rule applies to preclude the use of evidence from the dog sniff in Officer Fear's search warrant application and the derivative evidence from the search of Burston's apartment and post-arrest interview. As a result, the district court's denial of Burston's suppression motion is reversed and this case is remanded for proceedings consistent with this opinion.

---

[1] Marco is trained to sit and wait for a reward upon smelling the strongest source of odor of narcotics.

[2] The government disputes whether the grill was present during the dog sniff and whether Marco was required to go between the bush and the window to sniff.

[3] *Jardines* was decided after the dog sniff and apartment search but prior to Burston's suppression motion.

[4] The Supreme Court in *Jardines* did "not decide whether the officers' investigation of [the defendant's] home violated his expectation of privacy under [*Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ]." 133 S.Ct. at 1417. The decision was based on the violation of the defendant's property, not privacy, rights.

[5] At Burston's suppression hearing, the officers testified they could not remember if a grill was present during the dog sniff or search of the apartment. Officer Fear testified that nothing impeded the dog from sniffing in that area. From Officer Fear's testimony alone, the magistrate judge concluded "the grill was likely absent at the time of the dog sniff." We do not make the same inference.

[6] *See United States v. Hopkins,* No. CR14–0120, 2015 WL 4087054, at \*4 (July 6, 2015 N.D.Iowa) (holding a "cement area outside Defendant's [apartment's] front door," which was an area shared with one other unit, was protected curtilage).

[7] By focusing on Officer Fear's location instead of the drug-detection dog's location, the district court's decision suggests an officer may remain in a lawful location while his or her drug dog unlawfully invades the curtilage of a home. This suggestion is erroneous. *See Scott,* 610 F.3d at 1016 ("In both [*United States v. Roby,* 122 F.3d 1120, 1124 (8th Cir.1997) ] and the present case, *the dog sniffs occurred in a place where law enforcement was lawfully present.*") (emphasis added). As argued in appellant's opening brief, if this Court were to adopt the district court's suggestion, an entirely separate question arises regarding the limits of that technique.

[8] The distinct good faith exception to the exclusionary rule articulated in *Leon* is also inapplicable here. The officers' reliance on the search warrant could not be deemed objectively reasonable because the same officers' prewarrant conduct was not "close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *United States v. Cannon,* 703 F.3d 407, 413 (8th Cir.2013)

(quoting *United States v. Conner,* 127 F.3d 663, 667 (8th Cir.1997)).

**All Citations**

--- F.3d ----, 2015 WL 7454379

---

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.